```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA

CITADEL BUILDERS, LLC                       CIVIL ACTION

VERSUS                                      NO: 06-7719

TRANSCONTINENTAL REALTY                     SECTION: "A" (3)
INVESTORS, INC.
```

### ORDER AND REASONS

Before the Court is a **Motion for Summary Judgment (Rec. Doc. 22)** filed by plaintiff Citadel Builders, L.L.C.  Defendant Transcontinental Realty Investors, Inc. opposes the motion.  The motion, set for hearing on April 18, 2007, is before the Court on the briefs without oral argument.  For the reasons that follow, the motion is DENIED.

**II    BACKGROUND**

This dispute arises out of a construction contract to build a parking garage in downtown New Orleans.  Transcontinental Realty Investors, Inc. ("Transcontinental"), as owner, and Citadel Builders, L.L.C. ("Citadel"), as general contractor, executed the contract documents on August 15, 2005.  Citadel alleges that it immediately began work on the project until Hurricane Katrina struck the area on August 29, 2005, at which time the project was delayed.  Citadel claims that it returned to New Orleans following Katrina and was ready to resume work on the project.

Transcontinental cancelled the contract on November 7, 2005, asserting that "rising construction costs, physical and financial problems for the city of New Orleans resulting from Hurricanes Katrina and Rita" made it "impractical to proceed . . . ." (Pla. Exh. 8). On November 15, 2005, Citadel responded that under the terms of the contract it was owed $366,549.40, because Transcontinental was "terminating [the contract] for convenience," but that Citadel would accept $184,087.86 to settle the matter. (Pla. Exh. 9). Citadel's costs incurred to date had been $16,549.40 of the estimated project cost of $7,215,510. (Id.). No construction had begun and Citadel's work on the project thus far had been limited to hiring two administrative employees to help manage the project. (Pla. Att. 5). Transcontinental offered to pay $25,000 to settle the claim prior to the parties attending a private mediation. (Def. Exh. 6). Citadel contends that during the private mediation Transcontinental agreed to allow Citadel to rebid the project and if Transcontinental rejected the bid then Transcontinental would pay Citadel $100,000. (Pla. Pet. ¶ 12, Pla. Exh. 12). Citadel alleges that Transcontinental refused to honor that agreement. (Id.).

Citadel now moves for summary judgment on its claims against Transcontinental.

**II.  DISCUSSION**

In support of summary judgment Citadel argues that the terms of the contract entitle it to judgment as a matter of law because under the facts Transcontinental terminated the contract "for convenience" rather than for cause.  Citadel contends that the contract lists five exclusive "for cause" reasons that Transcontinental can cancel the contract without being penalized.  Citadel argues that when none of the five exclusive "for cause" reasons apply then the termination is "for convenience" which subjects the owner to a financial penalty.  Thus, according to Citadel, Transcontinental owes $16,549.40 for costs expended prior to termination and $350,000 in expected profit on the project for a total of $366,549.40.

In opposition, Transcontinental argues that contested issues of material fact preclude summary judgment.  Urging a defense of "impossibility" of performance, Transcontinental contends that there are issues of fact as to the fortuity of Hurricane Katrina and as to the impossibility of performance.  Transcontinental contends that it was ready to go forward with the project based on the price quoted by Citadel prior to Katrina but Citadel informed Transcontinental that it could not go forward at the previously agreed upon price due to post-Katrina costs.  Transcontinental claims that Citadel pushed for a renewed

3

commitment to refinance the project at a higher cost and indicated that there might even be higher cost exposure due to increases in materials and labor and the need to provide housing for workers.  (Def. Exh. A).  Transcontinental contends that the widespread destruction of the New Orleans economy, the decimation of its housing supply, and the prolonged forced evacuation of its citizens was clearly an event not contemplated by either party to the contract.

Transcontinental asserts that additional discovery would aid it in opposing the motion.

In reply, Citadel argues that Transcontinental's impossibility defense must fail because even if Katrina was a fortuitous event it did not render performance impossible.  According to Citadel, economic hardships do not make a contract impossible to perform.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-movant, "show that there is no genuine issue as to any material fact."  TIG Ins. Co. v. Sedgwick James, 276 F.3d 754, 759 (5th Cir. 2002) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986)).  A dispute about a material fact is "genuine" if the evidence is such that a

4

reasonable jury could return a verdict for the non-moving party. Id. (citing Anderson, 477 U.S. at 248).  The court must draw all justifiable inferences in favor of the non-moving party.  Id. (citing Anderson, 477 U.S. at 255).  Once the moving party has initially shown "that there is an absence of evidence to support the non-moving party's cause," Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986), the non-movant must come forward with "specific facts" showing a genuine factual issue for trial.  Id. (citing Fed. R. Civ. P. 56(e); Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986)).  Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial. Id. (citing SEC v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993)).

> Louisiana Civil Code article 1873 provides in relevant part:
>
> An obligor is not liable for his failure to perform when it is caused **by a fortuitous** event **that makes performance impossible**.
>
> An obligor is, however, liable for his failure to perform when he has assumed the risk of such a fortuitous event.
>
> . . . .

La. Civ. Code Ann. art. 1873 (West 1987) (emphasis added).  "A fortuitous event is one that, at the time the contract was made, could not have been reasonably foreseen."  La. Civ. Code Ann.

5

art. 1875 (West 1987). "When the entire performance owed by one party has become impossible because of a fortuitous event, the contract is dissolved." La. Civ. Code Ann. art. 1876 (West 1987). "When a fortuitous event has made a party's performance impossible in part, the court may reduce the other party's counterperformance proportionally, or, according to the circumstances, may declare the contract dissolved." La. Civ. Code Ann. art. 1877 (West 1987).

In <u>Schenck v. Capri Construction Co.</u>, the appellate court upheld the district court's ruling awarding a contractor actual expenses and penalties after the homeowners cancelled a contract for an addition to their home following Hurricane Betsy. 194 So. 2d 378 (La. App. 4th Cir. 1967). The parties had executed the contract about two weeks before Betsy struck and minor work had already begun on the project. Plaintiffs' Carolyn Park home was inundated with nearly 6 feet of flood water during Betsy and the water did not recede for several days. Plaintiff then sought to cancel the contract for the addition claiming that Betsy was a fortuitous event that made it impossible for them to do what they had contracted to do, <u>i.e.</u>, pay for the new addition while now having to repair the flood damage to the home and replace most of their personal possessions. 194 So. 2d at 379.

In affirming the judgment against the plaintiff-homeowners

the court noted that their claim was not one for impossibility of performance but rather for economic feasibility given that they now needed money to repair the flood damage to their home. Id. at 379-80.  The court explained that under settled jurisprudence an obligor is not released from a duty to perform under a contract by the mere fact that such performance has been made more difficult or more burdensome by a fortuitous event. Id. at 380.  Because Betsy did not render plaintiffs' performance under the contract impossible but only more difficult or burdensome, they could not avoid the contractual penalties associated with cancelling the contract. Id.

    Similarly, in Popich v. Fidelity & Deposit Co., a building under construction sustained damages during Hurricane Betsy.  245 So. 2d 394 (La. 1971).  The contractor's surety sought to avoid paying attorney's fees under a contract by arguing that Betsy's intervention in the construction project excused the surety's obligation for any type of penalty under the contract.  The court rejected that argument because the hurricane itself did not prevent the contractor from completing the project. Id. at 396. Rather, the contractor failed to perform due to the scarcity of labor during the months following the hurricane which is not the

7

same thing as an inevitable accident or irresistible force.[1]  <u>Id.</u> The difficult conditions in the aftermath of the hurricane that impeded the contractor in the performance of his obligations were "remote" from the fortuitous event itself and did not relieve him or his surety of their bargained for contractual obligations.  <u>Id.</u> at 168-69.

Cases such as <u>Schenck</u> and <u>Popich</u> do not bode well for Transcontinental because they tend to undermine the assertion that the economic impact of Katrina is itself a fortuitous event.  However, the Court finds some merit in Transcontinental's assertion that cases like <u>Schenk</u> and <u>Popich</u> might be distinguishable today because they do not address the scope of the damage to New Orleans and its economy as a whole, particularly how that damage affected *both* sides of the transaction in this case.

Moreover, this Court does not agree with Citadel's assertion that Hurricane Katrina and her aftermath were reasonably foreseen by the parties at the time the contract was confected.  While it is true that hurricanes are a common occurrence in New Orleans during the month of August, Katrina devastated this area in ways beyond what anyone predicted when the levee system failed and

---

[1] Civil Code article 1873 now uses the term "fortuitous event" instead of "inevitable accident or irresistible force."

8

caused widespread destruction to businesses, housing, and the infrastructure of the entire greater New Orleans area and gulf coast region.  Nearly two years after Katrina the citizenry continues to face daily reminders of the devastation and destruction sustained in this area--damages beyond what anyone could have reasonably foreseen.  The Court will not rule as a matter of law that Katrina *and her aftermath* are not fortuitous events under Louisiana law.

As for whether Katrina and her aftermath rendered performance impossible under the contract, the Court is persuaded that Citadel is not entitled to judgment as a matter of law on this issue.  Citadel's motion focuses solely on whether Transcontinental can establish impossibility of performance given that Transcontinental cancelled the contract.  But Citadel cannot prevail unless it stood ready to honor its own obligations under the contract including completing the project at the pre-Katrina agreed upon price notwithstanding the post-Katrina increase in materials, labor, and housing.  Citadel was complaining of post-Katrina price increases of at least 2 percent approximately a month before Transcontinental cancelled the contract.  (Def. Exh. 1).  According to Transcontinental Citadel had suggested that there might be further cost exposure beyond that 2 percent and Transcontinental claims that the parties were trying to

9

renegotiate a price closer to the pre-Katrina agreed upon price. (Def. Exh. A).  Clearly, issues of fact exist as to whether Citadel's own performance would have been possible had Transcontinental insisted on completing the project at pre-Katrina prices.  If Transcontinental had not terminated the contract early on and released Citadel of its obligations, Citadel might very well have been forced to claim impossibility of performance and cancel the contract in order to avoid losing a great deal of money on the project.  Even if Citadel's performance would have been impossible in part, Civil Code article 1877 gives the Court authority to dissolve the contract if the circumstances warrant such action.

In sum, the current record does not support judgment as a matter of law in Citadel's favor.

Accordingly, and for the foregoing reasons;

**IT IS ORDERED** that the **Motion for Summary Judgment (Rec. Doc. 22)** filed by plaintiff Citadel Builders, L.L.C. should be and is hereby **DENIED**.

June 22, 2007

_____
JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE06

10